```
 1              BEFORE THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES OF AMERICA,        .
                                      .  Case Number 21-cr-483
 4            Plaintiff,              .
                                      .
 5        vs.                         .
                                      .  Washington, D.C.
 6   EDWARD RODRIGUEZ,                .  March 13, 2023
                                      .  9:17 a.m.
 7            Defendant.              .
     - - - - - - - - - - - - - - - -

 8

 9                   TRANSCRIPT OF PLEA HEARING
            BEFORE THE HONORABLE DABNEY L. FRIEDRICH
10                 UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the United States:      WILL WIDMAN, ESQ.
                                 Department of Justice
13                               1301 New York Avenue Northwest
                                 Washington, D.C. 20530
14

15   For the Defendant:         NORA HIROZAWA, AFPD
                                 Federal Public Defender's Office
16                               One Pierrepont Plaza
                                 16th Floor
17                               Brooklyn, New York 11201

18

19

20

21   Official Court Reporter:   SARA A. WICK, RPR, CRR
                                 United States District Court
22                                 for the District of Columbia
                                 333 Constitution Avenue Northwest
23                               Washington, D.C. 20001
                                 202-354-3284
24

25   Proceedings recorded by stenotype shorthand.
     Transcript produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S

 2          (Call to order of the court.)

 3              COURTROOM DEPUTY:  Your Honor, we are in Criminal

 4   Action 21-483, United States of America versus Edward Rodriguez.

 5          If I can have counsel please approach the podium and state

 6   your name for the record, starting with the United States.

 7              MR. WIDMAN:  Good morning, Your Honor.  Will Widman

 8   for the government.

 9              THE COURT:  Good morning, Mr. Widman.

10              MS. HIROZAWA:  Good morning, Your Honor.  Nora

11   Hirozawa, Federal Defenders of New York, on behalf of Mr. Edward

12   Rodriguez, who is present on bond.

13              THE COURT:  All right.  Good morning, Ms. Hirozawa and

14   Mr. Rodriguez.

15          So is Mr. Rodriguez prepared to enter a plea today?

16              MS. HIROZAWA:  That is correct, Your Honor.  We will

17   be pleading open to the indictment.

18              THE COURT:  And that's Count 2?

19              MS. HIROZAWA:  Count 2 of the indictment, yes.

20              THE COURT:  And that is both the 111(a)(1) and the

21   111(b) charge?

22              MS. HIROZAWA:  That's correct, Your Honor.

23              THE COURT:  Okay.  All right.  And I have before me a

24   Waiver of Trial by Jury.  Otherwise, it's just a straight-up

25   plea, and the government is going to agree to dismiss the
```

1    remaining charges at the time of sentencing; is that right?

2              MR. WIDMAN:  Yes, Your Honor.

3              THE COURT:  Okay.  Is there any other aspect of this

4    agreement that needs to be put on the record?  I am going to go

5    through a colloquy with Mr. Rodriguez, but any other elements to

6    it that I'm missing?

7              MS. HIROZAWA:  Your Honor, I think the only thing I

8    would note is that the government has agreed that the factual

9    basis for the 111(b) will be based on bodily injury as opposed

10   to a deadly or dangerous weapon being used.

11             THE COURT:  Okay.

12             MR. WIDMAN:  Your Honor, I will say, however, the

13   government does intend to argue for the dangerous weapon

14   enhancement at sentencing.

15             THE COURT:  So it's not that the government is saying

16   it's conceding it's not a deadly or dangerous weapon; you're

17   just not seeking that for the conviction?

18             MR. WIDMAN:  Correct.  The element of (b) would be

19   satisfied by --

20             THE COURT:  And the impact that has is a two-level

21   swing in the guidelines; is that right?

22             MR. WIDMAN:  I believe so, as a sentencing

23   enhancement.

24             THE COURT:  Okay.  All right, then.  Let me have you

25   please come to the podium, Ms. Hirozawa and Mr. Rodriguez.

1          MS. HIROZAWA:  Yes, Your Honor.

2          THE DEFENDANT:  Good morning, Your Honor.

3          THE COURT:  Good morning, sir.  How are you?

4          THE DEFENDANT:  Good.  How are you?

5          THE COURT:  Doing well, thanks.

6     All right.  So Mr. Rodriguez, I understand you wish to

7     enter a plea of guilty today; is that correct?

8          THE DEFENDANT:  Correct.

9          THE COURT:  All right.  And you understand there's no

10    signed plea agreement, just this Waiver of Trial by Jury?

11         THE DEFENDANT:  Correct.

12         THE COURT:  Okay.  And you understand that even though

13    there's no plea agreement, if the sentence that I impose is

14    greater than you expect it will be, you still will be bound by

15    your plea here today?  Do you understand that?

16         THE DEFENDANT:  Yes.  On sentencing, I will be given

17    the opportunity to speak about my facts as well?

18         THE COURT:  Of course.

19         THE DEFENDANT:  So yes, I understand.

20         THE COURT:  Okay.  Mr. Hopkins, could I have you

21    please administer the oath to Mr. Rodriguez.

22        (Defendant sworn.)

23         THE COURT:  Mr. Rodriguez, you understand, now that

24    you've been placed under oath, you could be prosecuted for

25    perjury or for making a false statement if you were to testify

1    falsely here today?

2              THE DEFENDANT:  Yes.

3              THE COURT:  All right.  I'm going to ask you a series

4    of questions to make sure that you understand your rights and

5    that this plea is voluntary.  If at any point you don't

6    understand my question, please ask me to repeat the question.

7    I'm also willing to give you time to speak to your attorney

8    privately if you would like that time.  It's very important for

9    this to be a valid plea that you understand each question before

10   you answer.

11       Do you understand?

12             THE DEFENDANT:  Yes.  Thank you.

13             THE COURT:  All right.  Can you tell me what year you

14   were born?

15             THE DEFENDANT:  1995.

16             THE COURT:  All right.  And were you born here in the

17   United States?

18             THE DEFENDANT:  Yes, in New York, Bronx.

19             THE COURT:  Okay.  How far did you go in school?

20             THE DEFENDANT:  All the way to college level.  I

21   didn't graduate, but I have some college credits.

22             THE COURT:  Okay.  You graduated from high school, I

23   take it?

24             THE DEFENDANT:  Yes, with good credits.

25             THE COURT:  All right.  Have you taken any medications

1   or anything else in the last 48 hours that might interfere with

2   your ability to follow these proceedings?

3           THE DEFENDANT:  No, Your Honor.

4           THE COURT:  Is there any other reason that might make

5   it difficult for you to follow these proceedings?

6           THE DEFENDANT:  No, Your Honor.

7           THE COURT:  Have you received a copy of the indictment

8   in this case which contains the written charges against you?

9           THE DEFENDANT:  Yes, I have.

10          THE COURT:  And was there a superseding indictment?

11  You received a copy of that as well?

12          THE DEFENDANT:  Yeah, it was altered, and I received

13  that one as well.

14          THE COURT:  Okay.  And you read and understand it?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Okay.  Does counsel for either side doubt

17  Mr. Rodriguez's competence to enter a plea at this time?

18  Ms. Hirozawa?

19          MS. HIROZAWA:  No, Your Honor.

20          THE COURT:  Mr. Widman?

21          MR. WIDMAN:  No, Your Honor.

22          THE COURT:  All right.  Based on Mr. Rodriguez's

23  answers to my questions and counsel's representations, I do find

24  he's fully competent and capable of entering an informed plea.

25      Mr. Rodriguez, I understand that instead of going to trial,

1    you wish to plead guilty to the offense of assaulting,

2    resisting, or impeding certain officers using a dangerous weapon

3    in violation of Title 18 United States Code Section 111(a)(1)

4    and (b), not a dangerous weapon, but --

5             MS. HIROZAWA:  Not a deadly or dangerous weapon, Your

6    Honor.

7             THE DEFENDANT:  Yes, not deadly or dangerous weapon.

8             THE COURT:  But to meet the requirement of (b), it's

9    not a dangerous or deadly weapon, but it's a --

10            MS. HIROZAWA:  Resulted in bodily injury.

11            THE COURT:  You understand that?  You're pleading

12   guilty to assault which resulted in bodily injury in violation

13   of Title 18 United States Code Section 111(a)(1) and (b)?

14            THE DEFENDANT:  Yes, although I didn't plan on doing

15   that, my actions did result into that, yes.

16            THE COURT:  Okay.  Before we go over the details of

17   this plea, let me ask Mr. Widman, was there a more lenient plea

18   offer made to Mr. Rodriguez in this case?

19            MR. WIDMAN:  There was a written plea offer that was

20   given to Mr. Rodriguez, but it was rejected.

21            THE COURT:  Okay.

22            MS. HIROZAWA:  I would not characterize it as more

23   lenient, Your Honor.

24            THE COURT:  And you communicated that plea offer to

25   Mr. Rodriguez?

1          MS. HIROZAWA:  That is correct, Your Honor.

2          THE COURT:  That's correct, Mr. Rodriguez?

3          THE DEFENDANT:  But they rejected our offer, although

4     I've been doing very well.

5          THE COURT:  All right.  So Mr. Widman, if I can have

6     you review for the Court what the government's evidence would

7     show if this case went to trial, and Mr. Rodriguez, I want you

8     to listen carefully to what the government says, because at the

9     end of his statement, I'm going to ask you if you agree that

10    that's actually what happened in this case.  Okay?  So if you

11    disagree about something, I'm going to need you to let me know.

12         THE DEFENDANT:  Thank you, Your Honor.  I will.

13         THE COURT:  Okay.  All right.  Mr. Widman?

14         MR. WIDMAN:  Your Honor, if you will allow, I have a

15    brief caveat before I assert the facts in this case.

16         THE COURT:  Of course.

17         MR. WIDMAN:  The government is prepared to accept

18    Mr. Rodriguez's plea to Count 2 of the superseding indictment to

19    charging 111(a) and (b).  And the government takes very

20    seriously -- or appreciates and takes very serious his decision

21    to accept responsibility.  Mr. Rodriguez has expressed through

22    counsel and last week to me personally this decision to accept

23    responsibility.  The defendant has made this important decision

24    with the advice of counsel, Ms. Hirozawa, who has been a very

25    professional advocate in our plea negotiations.

We do not have a signed, agreed upon Statement of Offense in this case, and at this point, I would pause to say that the government reiterates a preference in all criminal prosecutions to proceed through written plea agreements for this very reason.

Defense counsel has acknowledged that there is a factual basis for assault committed with a chemical spray which would satisfy the elements of 111(a) and (b).

The government will read into the record facts that the government believes could be proven beyond a reasonable doubt at trial.  These facts concern the context of the events of January 6; the defendant's presence in D.C. on that date; the circumstances and means by which the assault was committed by the defendant; and the effects that the attack had on law enforcement victims; as well as the defendant's statements made after the attack occurred.

The government fully expects that the defense will not agree or stipulate to all of the facts that I'm about to recount to the Court.  The government recognizes that the elements of Count 2 are satisfied with a simple description of discrete events of the assault.  That being said, the government asks this Court to hear all of the facts that are germane to this offense and allow the defense to object, if desired, after the presentation of the government's facts.

THE COURT:  Mr. Widman, I appreciate that.

Ms. Hirozawa, how do you suggest we proceed?  I don't want

1    Ms. Rodriguez to have to try to recall what he objects to.  Does

2    it make sense to let the government go and then have you

3    represent the areas of disagreement and have him affirm that, or

4    would you prefer to go first?

5              MS. HIROZAWA:  Your Honor, I'm not sure how the Court

6    prefers to proceed.  Mr. Rodriguez is prepared to allocute as to

7    his conduct that meets the elements of the offense he's pleading

8    guilty to.

9        The government has provided me with a six-page document

10   that details general circumstances of January 6, 2021, that I

11   think have no bearing on Mr. Rodriguez's plea today.  I would

12   object to the entry of all of those facts into the record, and

13   we would not be admitting any of those facts.

14       I think if the government would like to present that

15   information, the appropriate time would be sentencing.  To the

16   extent they're seeking to have the Court consider that

17   information as relevant conduct, although Mr. Rodriguez, of

18   course, would dispute that anyone -- that many actions

19   constitute relevant conduct to the offense he's pleading guilty

20   to, if the Court prefers to hear the full six-page recitation of

21   the generalized facts, we're happy to be present while the

22   government reads this.  However, I do think that the factual

23   allocution prepared would address the elements of the offense.

24             THE COURT:  That Mr. Rodriguez is prepared to give the

25   Court?

1    MS. HIROZAWA:  Yes, and we're happy to proceed with

2    that, and if the Court believes there's any other information

3    that would aid the Court in accepting his plea, the government

4    is welcome to supplement the factual basis and --

5        THE COURT:  Mr. Widman, is what you're about to tell

6    me really six pages long?

7        MR. WIDMAN:  It is a brief description of the general

8    events of January 6 and then another description of

9    Mr. Rodriguez's --

10       THE COURT:  Okay.

11       MR. WIDMAN:  -- discrete conduct.  I will say it's

12   double spaced.  So it's not --

13       THE COURT:  Just understand, I'm very familiar with

14   the background of January 6 and what was happening that day

15   around where he was from the multiple trials I've had, so if you

16   can truncate that.  I will let the government go ahead and put

17   it on the record, but I will rely on what Mr. Rodriguez has to

18   say in determining whether there's an adequate factual basis for

19   the plea.

20       MR. WIDMAN:  Yes, Your Honor.  And I will refer the

21   Court to a Statement of Facts that was filed in conjunction with

22   the criminal complaint in this case with regard to the

23   background events of January 6.

24       THE COURT:  And I've reviewed the complaint.

25       MR. WIDMAN:  So I will go ahead and skip the general

1    background of the events.

2              THE COURT:  That would be helpful.

3              MR. WIDMAN:  And I will move directly to what the

4    government believes it could prove beyond a reasonable doubt

5    regarding Mr. Rodriguez's participation in the January 6, 2021,

6    Capitol riot.

7         Mr. Rodriguez, the defendant, lives in Brooklyn, New York.

8    Mr. Rodriguez traveled by train from New York City to

9    Harrisburg, Pennsylvania, on January 5, 2021, where he then

10   boarded a charter bus organized by a local Stop the Steal group.

11   The bus arrived in Washington, D.C., either late the night of

12   January 5 or early in the morning on January 6.

13        On January 6, Mr. Rodriguez attended the Stop the Steal

14   rally and then marched with other protestors to the Capitol.  By

15   at least 1:54 p.m., Mr. Rodriguez was standing on the restricted

16   grounds of the Capitol on the West Plaza.  Mr. Rodriguez was

17   standing at the front of a large crowd just behind a line of

18   barriers that had been erected to keep the crowd back and away

19   from the Capitol building.  He was holding a sign that

20   read "Stop the Steal."  The crowd made multiple attempts to push

21   forward past the barriers, and law enforcement forced the crowd

22   back.

23        At approximately 2:09 p.m., law enforcement deployed a

24   pepper spray at the crowd.  Mr. Rodriguez held his sign in front

25   of his face and moved back to avoid the spray.

1    At approximately 2:10 p.m., Mr. Rodriguez returned to the

2  front of the crowd and deployed bear attack deterrent spray at

3  law enforcement officers who were attempting to keep the crowd

4  from advancing towards the Capitol building.  Three police

5  officers were directly hit by the bear attack deterrent spray

6  deployed by Mr. Rodriguez.  Four additional police officers were

7  in the immediate proximity and suffered from the effects of the

8  spray.  At least one of the officers who was directly hit,

9  Metropolitan Police Department Officer N.D., was sprayed in the

10 eyes and face with the bear attack deterrent spray deployed by

11 Mr. Rodriguez.

12   When interviewed, Officer N.D. remembered Rodriguez --

13 Mr. Rodriguez as one of the individuals who conducted spraying

14 because of Mr. Rodriguez's distinctive red hat and red face

15 mask.  Officer N.D. remembered Mr. Rodriguez being at the front

16 of the crowd for most of the time that Officer N.D. was at the

17 barrier line.  Officer N.D. remembered being sprayed in the eyes

18 and face by Mr. Rodriguez.

19   Even though he was wearing protective gear, Officer N.D.

20 only had a partial Plexiglass shield covering his face, and it

21 did not provide protection against bear attack deterrent spray.

22 Officer N.D. recalled, quote, immense pain, end quote, to his

23 eyes and face after the spraying.

24   Officer N.D. remarked that he was wearing contacts on

25 January 6, which made chemicals like pepper spray cling to and

1    cause further pain to his eyes.  Officer N.D. had to leave the

2    line to flush his eyes out with water and had to be assisted in

3    doing so by his superior officer.

4        Officer N.D. stated that under different circumstances, he

5    would have stayed off the line for longer to recover from the

6    attack, but he felt a duty to get back on the line despite being

7    in, quote, immense pain, end quote.  Officer N.D. stated that he

8    does not normally encounter death, but he thought that he or

9    other officers could die on January 6, and he returned to the

10   line as soon as possible to protect his fellow officers.

11       After deploying the bear attack deterrent spray at police

12   officers, Mr. Rodriguez retreated to the rear of the crowd and

13   then left the Capitol grounds.

14       Later that day, Mr. Rodriguez gave an interview that was

15   posted on Twitter.  In the interview, Mr. Rodriguez said, "I

16   believe us Americans, we the people, we're tired.  We can see

17   the corruption, the dictatorship from very far away.  A lot of

18   people are scared.  But what they need to understand and they

19   need to know is that here in America we fight back."

20       Mr. Rodriguez gave another interview that was later posted

21   to social media.  In that interview, Mr. Rodriguez said, "I was

22   there, and I just want to let you know that we in America, we

23   fight back."

24       Referring to police officers, Mr. Rodriguez remarked, "They

25   were pepper spraying people, but the police got it back."

1    Mr. Rodriguez agreed to a post-arrest interview with FBI

2    investigators.  Mr. Rodriguez advised that he -- confirmed that

3    he traveled to Washington, D.C., for the Stop the Steal rally.

4    Mr. Rodriguez admitted to being present on the Upper West Plaza

5    and to spraying police officers with an unknown spray that he

6    thought was either pepper spray or bear attack deterrent spray.

7    Mr. Rodriguez admitted that he knew that the people he was

8    spraying were police officers at the time he deployed the spray.

9    A review of video and photographic evidence showed the spray

10   deployed by Mr. Rodriguez was labeled "Frontiersman bear attack

11   deterrent."

12   Several days after the riot, Mr. Rodriguez's Google search

13   history showed a query, "What does bear spray do to humans?"

14   which led agents to believe Mr. Rodriguez knew that the spray

15   that he deployed against the police officers was bear attack

16   deterrent spray.

17   Your Honor, based on this recitation of the facts, the

18   government believes that it could prove beyond a reasonable

19   doubt all elements of 18 U.S.C. Section 111(a)(1) and (b).

20   Specifically, Mr. Rodriguez forcibly assaulted, resisted,

21   opposed, impeded, intimidated, or interfered with any person

22   designated under 18 U.S.C. Section 1114 while engaged in or on

23   account of their performance of official duties.

24   Specifically, Mr. Rodriguez voluntarily and intentionally

25   sprayed law enforcement officers with bear attack deterrent

spray, including a police officer, Officer N.D.  Mr. Rodriguez

knew at the time of the assault of the officer that he was

engaged in the performance of his official duties, and the

government would argue that Mr. Rodriguez used a dangerous

weapon, bear attack deterrent spray, and inflicted bodily

injury, specifically immense pain to the eyes and face of

Officer N.D. as a result of the spraying.

And finally, as a caveat, the government -- it's the

government's understanding that the defendant's admitted basis

for 111(b) would be inflicting bodily injury and not the use of

a dangerous weapon.  The government takes the position that

there's no need for the Court to make a specific finding

regarding the use of a dangerous weapon for the purposes of the

plea today.

However, the government continues to insist that oleoresin

capsicum spray is a dangerous weapon in this case and will prove

it accordingly at sentencing under the guidelines.

THE COURT:  Mr. Widman, can you tell me now what the

distance was from Mr. Rodriguez and the officer who was harmed?

MR. WIDMAN:  I don't want to speak off the top of my

head, but it was under 10 feet.

THE COURT:  Okay.  All right.  Ms. Hirozawa, do you

want to have you or Mr. Rodriguez give me the factual basis?

MS. HIROZAWA:  Yes.  First, I would just note again

that we do object to the government's recitation of the facts.

1    A number of these facts, we think, are either irrelevant to the

2    elements of the offense that he is pleading to or we dispute the

3    characterization.

4        For example, although I would like to lodge a general

5    objection to all of the facts recited by the government beyond

6    the factual basis I'm about to have Mr. Rodriguez recite, we

7    specifically object to the characterization of the area in which

8    he was standing as restricted grounds.  I believe there is one

9    mention of Mr. Rodriguez standing at the West Plaza.  There's

10   another indication, I think in the context of his post-arrest

11   statement, that he admitted being present on the Upper West

12   Plaza.

13       I recognize there are various terms that have been used by

14   the government to describe the geography of the Capitol and its

15   surroundings.  But we object generally to the government's

16   characterization as the area --

17              THE COURT:  That he was on restricted grounds?

18              MS. HIROZAWA:  That he was on restricted grounds.

19       We also object specifically to the government's

20   characterization of the chemical spray as bear attack deterrent

21   spray and would ask that the Court reserve any sort of factual

22   finding on that until sentencing.

23       And we also would request that the Court reserve any

24   factual findings regarding the number of officers that were hit,

25   the distance at which they were hit, and any injuries suffered

1    by the officers for sentencing.

2        Okay.  I will turn it over to Mr. Rodriguez unless the

3    Court has any other questions for me.

4            THE COURT:  That's fine.  Thank you.

5            THE DEFENDANT:  Your Honor, I just want to say please

6    forgive me, because you're here today because of me.  The

7    government, I would like to also to apologize.

8        Your Honor, I did not plan to engage in any sort of

9    physical attack on January 6 at all.  However, based on a number

10   of reasons, including emotions and the adrenalin, I've never

11   been in such a large number of crowd before, my actions resulted

12   in bodily injury to a police officer.

13       I didn't --

14       (Defense counsel and defendant conferred.)

15           THE DEFENDANT:  Sorry.  Excuse us, Your Honor.

16           THE COURT:  It's all right.

17           THE DEFENDANT:  On January 6, yes, I did -- in the

18   District of Columbia, I used a chemical spray I found on the

19   ground to spray the Metropolitan Police officer right after I

20   was sprayed.  I acted willfully at that very moment.  It was so

21   fast.  I would say -- this says willfully, but I actually didn't

22   mean it.

23       I agree that the government could prove that the officer

24   was engaged in his official duties at the time and that his

25   official duties included assisting the Capitol Police in the

1    enforcement of federal law.

2         I agree that the government could prove that my actions

3    resulted in his -- I already said that part, in his bodily

4    injury right after I got sprayed, of course.

5              THE COURT:  Okay.  Is that it, Mr. Rodriguez?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Okay.  And Mr. Widman, can you just state

8    for the record clearly the elements of 111(a)(1) and (b)?

9              MR. WIDMAN:  Certainly.  If I could have one moment,

10   I'm going to pull the jury instructions up.

11             THE COURT:  Okay.

12             MR. WIDMAN:  The elements of Section 111(a), I will

13   read from the jury instructions from the District of Columbia.

14        In order to find the defendant guilty of forcibly

15   assaulting, resisting, opposing, impeding, intimidating, or

16   interfering with a person assisting law enforcement officers of

17   the United States who are engaged in the performance of their

18   official duties while making physical contact with the person or

19   acting with the intent to commit another felony, the finder of

20   fact must find the following elements beyond a reasonable doubt:

21        First, the defendant assaulted, resisted, opposed, impeded,

22   intimidated, or interfered with in this case Metropolitan Police

23   Department officers, including Officer N.D., an officer from the

24   Metropolitan Police Department.

25        Second, the defendant did such acts forcibly.

1      Third, the defendant did such acts voluntarily and

2  intentionally.

3      And fourth, that MPD officers, including Officer N.D., who

4  were assaulted, resisted, opposed, impeded, intimidated, or

5  interfered with, were assisting officers of the United States

6  who were engaged in the performance of their official duties.

7      Fifth, that the defendant made physical contact with and

8  assaulted a person who was assisting officers of the United

9  States who were engaged in the performance of their official

10  duties or acted with the intent to commit another felony.

11      And then for Section 111(b), in order to find the defendant

12  guilty of forcibly assaulting, resisting, opposing, impeding,

13  intimidating, or interfering with a person assisting officers of

14  the United States who are engaged in the performance of their

15  official duties -- and then it gives this disjunctive -- while

16  using a deadly or dangerous weapon and inflicting bodily

17  injury -- we would ask that bodily injury be the basis here --

18  the finder of fact must find the following elements beyond a

19  reasonable doubt:

20      First, the defendant assaulted, resisted, opposed --

21          THE COURT:  Mr. Widman, for the 111(b), it's just that

22  additional element on top of the ones you've just recited?

23          MR. WIDMAN:  That's correct, Your Honor.

24          THE COURT:  In this case, it's in the disjunctive, so

25  it's -- the element here would be that Mr. Rodriguez inflicted

1    bodily injury on the officer; correct?

2              MR. WIDMAN:  Yes, Your Honor --

3              THE COURT:  Except at sentencing, the government will

4    argue the dangerous -- the deadly or dangerous weapon as well?

5              MR. WIDMAN:  That's correct.

6         And I will note, Ms. Hirozawa brought up the fact that she

7    would ask the Court to reserve any findings on the injuries.  I

8    believe that for bodily injury, the Court would need to make

9    some finding, and I would ask if the Court could make the

10   finding that exists in the superseding indictment Count 2,

11   inflicting bodily injury on -- yes, that the bodily injury be

12   the immense pain discussed by Officer N.D.

13             THE COURT:  Ms. Hirozawa, does the defense object to

14   that?  I do think I need to make a finding of bodily injury.

15             MS. HIROZAWA:  Your Honor, I think that Mr. Rodriguez

16   has allocuted that he agrees the government could prove bodily

17   injury.  I don't think anything more is required.

18        If the Court --

19             THE COURT:  Does Mr. Rodriguez disagree that the

20   government can prove that the officer experienced immense pain

21   as a result of his contact lenses and the spray?

22             MS. HIROZAWA:  We don't dispute that he experienced

23   immense pain.

24             THE COURT:  Okay.  All right.  Very well.

25        First of all, let me ask Mr. Rodriguez, he has emphasized

that on January 6 here in Washington, D.C., he used a chemical

spray to spray an officer who was engaged in his official duties

and he acted willfully.

The statute requires the Court to find that he acted

forcibly and that he acted voluntarily and that he acted

intentionally.

I take it by use of the word "willfully," Mr. Rodriguez

intended to capture those other elements of intent; is that

right?

THE DEFENDANT:  At that very moment --

MS. HIROZAWA:  That's correct, Your Honor.

THE DEFENDANT:  -- I acted willfully at that moment.

I didn't plan on it, but yes.

THE COURT:  All right.  But in that moment, you did

act voluntarily?

THE DEFENDANT:  Well, it was a mix of emotions, Your

Honor, to be honest.  I wouldn't say I planned it at that

moment.  It was just -- I did it, but it wasn't that I was

intentionally doing it.  But by law, I know I'm required to say

that I --

THE COURT:  Wait.  Let me --

MS. HIROZAWA:  Your Honor, I think Mr. Rodriguez would

just like to clarify that there was no premeditation.  He did

not come to Washington, D.C., with the specific intent to injure

Officer N.D. or any other police officer.

1          THE COURT:  But in that moment, in the moment, he was

2     acting voluntarily, he was acting intentionally, and he acted

3     forcefully.

4          Correct, Mr. Rodriguez, in that moment?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Okay.  All right.  So I will -- at the

7     defense's request, I'm reserving making any specific factual

8     findings on the number of officers, the distance, the specific

9     nature of the injury other than the fact that, you know,

10    Mister -- I think the government has represented and the defense

11    agrees that the government could prove that Officer N.D. did

12    experience immense pain and that was a result of the chemical

13    spray that Mr. Rodriguez used to spray him in the face and

14    specifically in the eyes.

15         So I do find that there is a factual basis for this plea,

16    and I will reserve ruling on the dangerous or deadly weapon

17    aspect of it until sentencing.

18         Just as an aside, Mr. Widman, before sentencing, I'm

19    definitely going to want the government to provide me with the

20    video footage of this.

21         MR. WIDMAN:  Yes, Your Honor.  The government is

22    prepared to provide images, still images of video and video.

23         THE COURT:  Okay.  And then for the time of

24    sentencing, if either side seeks to introduce video, you know,

25    whatever you provide in advance of sentencing, you also need to

make it available in the Dropbox for the public.  So if you all
can work together to do that.

Ms. Hirozawa, I say the same thing.  If there are other
parts of the video that you would like video footage for the
Court to review other than what the government gives me, I
invite you to provide that as well.

MS. HIROZAWA:  Thank you.  And should we contact
Mr. Hopkins to receive the information for the Dropbox?

THE COURT:  I think actually Mr. Widman can help you
with that better than we can, but there is a box that we can
access that other January 6 video footage is in.

MR. WIDMAN:  And this Court prefers just to use that
USAfx Dropbox?  You don't prefer hard copies on USB?

THE COURT:  I think so, because getting it in a form
we can all play, it's easiest to use the Dropbox.

It will be very helpful for the Court -- I would prefer not
to get the 45-minute-long videos, but if you are going to do
that, that you direct my attention to the time stamps that are
relevant so that I can watch the most pertinent parts.  I don't
need to see the video that I've seen, the montage or whatever.
You can provide it, but I want specifics that you will be
relying on to make your case at sentencing.

MR. WIDMAN:  What I typically do, my practice is to
put the time code.  So I will put a still from the exhibit in
the body of the sentencing memo, a reference to the exhibit

1    number itself, and a time code for the Court to reference.

2              THE COURT:  That's great.

3              MR. WIDMAN:  When I file those exhibits, I will file a

4    Notice of Video Exhibits in ECF, and I will at the same time

5    provide those videos to defense counsel in a Dropbox.

6              THE COURT:  Great.

7              MR. WIDMAN:  If I'm going to play any specific videos

8    from that collection of exhibits at sentencing, does the Court

9    want prior notice of which of those, or if I just put them in my

10   memo, that's sufficient?

11             THE COURT:  That's okay.  You can -- whatever you'd

12   like at sentencing, but just make those available to the public

13   at the time of sentencing.

14        Mr. Rodriguez, I think I neglected to ask you, you heard me

15   ask the prosecutor to recite the elements of the offense, and I

16   just want to make sure that you understand the nature of the

17   charge against you that you're pleading guilty to.

18        You understand the elements?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  All right.  And Ms. Hirozawa, was there

21   something else you wanted to say about the videos?

22             MS. HIROZAWA:  I would just note for the Court's

23   reference that fortunately in this case, Mr. Rodriguez's actions

24   were limited to a very short period of time.  So I do not think

25   there will be a 40-minute video.  I think the video spans

1    approximately two minutes at most.

2              THE COURT:  Wonderful.  Okay.

3        Mr. Widman, I'm correct that the government has agreed to

4    dismiss the other pending charges at the time of sentencing;

5    right?

6              MR. WIDMAN:  Yes.  I believe Mr. Rosen has made such

7    representations at a prior setting.  Yes, we are.

8              THE COURT:  All right.  So in terms of the maximum

9    statutory penalty here for the violation of -- violations of

10   111(c)(1)(A) and also 111(b), am I correct that the maximum

11   penalty here is -- is it 20 or 8, Mr. Widman?

12             MR. WIDMAN:  I believe it's 20.

13             THE COURT:  20, okay.

14       So you understand, Mr. Rodriguez, that the maximum sentence

15   I could impose in this case is 20 years in prison, a maximum

16   fine of $250,000, a maximum term of supervised release after any

17   period of incarceration of not more than three years, and an

18   obligation to pay any applicable interest or penalties on fines

19   or restitution not timely made.

20       Do you understand that those are the maximum penalties I

21   could impose?

22             THE DEFENDANT:  Yes, Your Honor.

23       I hope you guys can consider the fact that I've never had

24   any federal charges before.

25             THE COURT:  Of course.  I just have to advise you of

1      the outer limit.  All right?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  And I just need to make sure that you

4      understand that's the maximum the Court could impose.  That does

5      not mean that the Court will impose that.  But I have to make

6      sure you're aware of the longest sentence you could receive.

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Okay.  All right.  And you also understand

9      you're agreeing to pay a special assessment of $100 --

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  And you understand that the Court could

12     impose a fine sufficient to pay the federal government for any

13     cost of imprisonment or supervision or period of probation.

14         Do you understand that?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  And you understand what supervised release

17     means?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  You understand that if the Court were to

20     sentence you to a period of imprisonment, the Court would impose

21     an additional period of supervised release, and during that

22     period, you would be subject to certain terms and conditions,

23     and if you violated those terms and conditions, you could be

24     sentenced to an additional period of time.

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  All right.  And you understand that parole

2     has been abolished in the federal system, so you would serve any

3     sentence of imprisonment that's imposed, less a small reduction

4     for -- possible reduction for good time credit, for good

5     behavior in prison.

6          THE DEFENDANT:  Yes, Your Honor.  If --

7          THE COURT:  I take it you've talked to your attorney

8     about the U.S. Sentencing Guidelines?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  You understand the offense you're pleading

11     guilty to is subject to the sentencing guidelines.

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  And you've discussed with her how the

14     guidelines might apply in this case?

15          THE DEFENDANT:  Yes.  She explained, and they're very

16     disturbing.

17          THE COURT:  Okay.  And you understand that the

18     sentence I impose could be different from any estimate that your

19     attorney has given you or the government has given you?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  And you understand I won't know exactly

22     what your guideline range will be until after I've had a chance

23     to review the presentence report that will be prepared in this

24     case?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And you understand that the guidelines are

2     not binding on the Court?  That is, the Court could sentence you

3     above the sentencing guidelines, within the sentencing

4     guidelines, or below the sentencing guidelines?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  And you understand that both you and the

7     government will have an opportunity to challenge the facts that

8     are reported to me by the probation officer?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  All right.  You understand that in

11    determining the sentence, my obligation will be to calculate the

12    guideline range, consider whether there are any possible

13    departures upward or downward from the guideline range, and then

14    to consider other sentencing factors that are listed in Title 18

15    of United States Code Section 3553(a).

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  All right.  Again, you understand the

18    sentence that I will impose can be anywhere within the guideline

19    range, above the guideline range, or below the guideline range,

20    but I can never sentence you higher than the statutory maximum,

21    which is 20 years in this case?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  All right.  There is no appeal waiver;

24    correct?

25         MS. HIROZAWA:  That's correct, Your Honor.

1          THE COURT:  All right.  Do the parties agree that I've

2     correctly stated the consequences of this plea in this case?

3     Mr. Widman?

4          MR. WIDMAN:  Yes, Your Honor.

5          THE COURT:  Ms. Hirozawa?

6          MS. HIROZAWA:  Yes, Your Honor.

7          THE COURT:  All right.  Ms. Rodriguez, is what I have

8     stated here what you've agreed -- is this what you want to do?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  All right.  Has anyone promised you the

11     sentence I will give you in this case?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  Has anyone made any promises other than

14     the one that I mentioned in order to get you to plead guilty?

15          THE DEFENDANT:  No, Your Honor.

16          THE COURT:  Do you have any confusion or any questions

17     about this plea that you'd like to ask either me or your lawyer

18     about?

19          THE DEFENDANT:  Not at this time.

20          THE COURT:  Okay.  You understand that you're giving

21     up some rights by pleading guilty.

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  All right.  I want to review those with

24     you now before I take your plea.  All right?

25          THE DEFENDANT:  Okay.

1      THE COURT:  You understand that you're not required to

2  plead guilty.

3      THE DEFENDANT:  Yes, Your Honor.

4      THE COURT:  And you understand that you have a right

5  to go to trial on all the charges in the indictment, the

6  superseding indictment, including the one you're pleading guilty

7  to today.

8      THE DEFENDANT:  Yes.

9      THE COURT:  And you understand that if you went to

10  trial, the government would have to prove you guilty beyond a

11  reasonable doubt.

12   Do you understand that?

13      THE DEFENDANT:  Yes.

14      THE COURT:  And to do that, the government would have

15  to convince 12 jurors to unanimously convict you.

16   Do you understand that?

17      THE DEFENDANT:  Yes.

18      THE COURT:  All right.  I have before me a Waiver of

19  Trial by Jury that I'm holding up for you to see.

20   Does that have your signature on it?

21      THE DEFENDANT:  Yes.

22      THE COURT:  And you've reviewed this Waiver of Trial

23  by Jury with your attorney?

24      THE DEFENDANT:  Yes, Your Honor.

25      THE COURT:  And you understand that by signing this,

1    you are waiving your right to have 12 jurors decide this case.

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  And you're comfortable doing that?

4              THE DEFENDANT:  Not really, but yes, Your Honor.

5              THE COURT:  Wait.  What did you say?

6              THE DEFENDANT:  Yes, I am comfortable.

7              THE COURT:  Did you say "not really"?

8              THE DEFENDANT:  Just a thought.

9              THE COURT:  Okay.  I want you to think for a moment,

10   because this is an important decision, to waive your right to a

11   trial by jury, and I want to make sure that you've had adequate

12   time to talk about it and enough time to talk to your attorney

13   and think about it.

14             THE DEFENDANT:  Yes.  I've gone over it with my

15   attorney for more than a year and a half, and I am comfortable.

16             THE COURT:  So you want to waive your right to have a

17   jury decide this case?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Okay.  All right.  Mr. Widman, anything

20   else you would like on the record about the Waiver of Trial by

21   Jury?

22             THE DEFENDANT:  No, Your Honor.  I think Mr. Rodriguez

23   wants to accept responsibility.

24             THE COURT:  Okay.  And Ms. Hirozawa, are you confident

25   that he's voluntarily and knowingly waiving his right to a trial

1    by jury?

2              MS. HIROZAWA:  Yes, Your Honor.

3              THE COURT:  Okay.  All right.  I will approve the

4    Waiver of Trial by Jury.  I'm signing it now.

5         All right.  In addition, Mr. Rodriguez, you understand that

6    if you went to trial, you would have the right to have your

7    lawyer with you throughout the trial and at every other stage of

8    the proceeding leading up to the trial?

9              THE DEFENDANT:  Yes, Your Honor.

10              THE COURT:  Okay.  And you understand that your lawyer

11    could make motions.  She could challenge any searches or

12    seizures.  She could move to suppress statements or any other

13    evidence.

14         Do you understand that?

15              THE DEFENDANT:  Yes, Your Honor.

16              THE COURT:  And she's been appointed to represent you;

17    correct?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Okay.

20              THE DEFENDANT:  There was another lawyer, but then she

21    came in.

22              THE COURT:  Okay.  All right.  So you understand you

23    have the right to appointed counsel; you don't have to pay for

24    your counsel.

25              THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  All right.  And you understand that your

2     counsel could also make objections during the trial.

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  And that she could cross-examine all of

5     the government's witnesses.

6        Do you understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And do you understand that you would have

9     the right to present a defense and put on evidence if you

10    wished, including your own witnesses whom you could subpoena and

11    require to testify on your behalf if you wished, but you would

12    not be required to put on any case at all because you would be

13    presumed innocent?  Do you understand that?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  All right.  Do you also understand that

16    you could testify at your trial if you chose to do so, but no

17    one could force you to testify, because you would have an

18    absolute right to remain silent at your trial?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Okay.  You look a little puzzled there.

21    Do you understand what I'm saying?

22         THE DEFENDANT:  I do; I do.

23         THE COURT:  I just want to make sure you understand

24    that if you had a trial, you could testify on the stand, and you

25    could explain what happened to the jury, if you wished, but you

1    would not be required to do that.

2                THE DEFENDANT:  Yes, Your Honor.

3                MS. HIROZAWA:  Your Honor, I just wanted to note for

4    Mr. Rodriguez's benefit, he will still have an opportunity to

5    speak directly to the Court at sentencing.

6                THE COURT:  Of course.  At sentencing, you will have a

7    chance to speak to me directly, Mr. Rodriguez, if you wish.  All

8    right?  You will have that opportunity at sentencing as well.

9        What I'm talking about is an opportunity to have the jury

10   decide the case or the judge decide your guilt or innocence

11   here.  You could have me decide that as well.  And you could

12   testify.

13       I just want to make sure that you're comfortable waiving

14   your right to a trial.

15               THE DEFENDANT:  Yes.  I don't wish to disrupt any more

16   of your time as well.

17               THE COURT:  Well, you don't need to worry about

18   disrupting my time.  I just want to make sure you feel

19   comfortable proceeding with this plea of guilty rather than

20   proceeding with a trial.

21               THE DEFENDANT:  Yes.

22               THE COURT:  Okay.  And you understand that if you

23   decided not to testify at trial, I would tell the jury they

24   could not hold that against you?

25               THE DEFENDANT:  Yes.

1          THE COURT:  All right.  And you understand that unless

2     and until I accept your guilty plea, the law presumes you are

3     innocent, because it is the government's burden to prove your

4     guilt beyond a reasonable doubt, and until it does, you cannot

5     be convicted at trial.

6          THE DEFENDANT:  Can you repeat that, Your Honor?

7          THE COURT:  Do you understand that you are presumed

8     innocent as you stand here?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Okay.  And you understand that it's

11     entirely the government's burden to prove your guilt at trial.

12          THE DEFENDANT:  Yes.

13          THE COURT:  Okay.  And until the government proves

14     your guilt beyond a reasonable doubt, you cannot be convicted at

15     a trial.

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  All right.  Do you understand that if you

18     were found guilty at your trial, you would also have the right

19     to appeal?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  And you understand that if you could not

22     afford an appeal, a lawyer would be appointed to represent you.

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  All right.  And you understand that if you

25     plead guilty, you will waive your rights to a trial, including

1    all the rights we've just discussed, and there will be no trial?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  All right.  Do you also understand that if

4    I accept your plea, you may be deprived of valuable civil

5    rights, such as the right to vote, the right to hold certain

6    jobs, the right to serve on a jury, and the right to possess any

7    kind of firearm or ammunition, depending on various local,

8    state, or federal laws?

9              THE DEFENDANT:  Your Honor, is a trial the same as a

10   bench trial?  I was informed that my lawyer also suggested --

11   not suggested, she briefed me about what a bench trial will be.

12   That will be -- that could be held with no jurors; right?

13             THE COURT:  Right.  That would be where I'm the finder

14   of fact.

15             THE DEFENDANT:  And I will be able to testify before

16   you as well?

17             THE COURT:  Right.  But that's not what you're doing

18   today.

19             THE DEFENDANT:  Right.

20             THE COURT:  Today, you seem to want to waive your

21   right to a trial, even a trial by the Court, and proceed to

22   sentencing.  It seems that you're saying you want to admit your

23   guilt but move to sentencing.  Is that right?

24        Do you want a moment to talk to your lawyer?  You look a

25   little bit confused.

1        THE DEFENDANT:  Well, yes.  Is that possible?

2        THE COURT:  Of course.  Take your time.

3    (Defense counsel and defendant conferred.)

4        THE DEFENDANT:  Your Honor, I know earlier I said I

5    did acted willfully, but the thing is, it was a matter of --

6        MS. HIROZAWA:  Wait.

7        THE DEFENDANT:  Just allow me to -- no?

8        MS. HIROZAWA:  No.

9      Your Honor, I think that Mr. Rodriguez has indicated that

10   if the Court would permit it, because the Court has made it

11   sound so good, he would like to proceed with a bench trial.  I

12   think we would be willing to stipulate to certain facts,

13   including some of the facts stated here today.  But he -- yes.

14       THE COURT:  Okay.  Can you help me understand,

15   Ms. Hirozawa, what his concern is about proceeding in this way?

16      Let her talk first.

17       MS. HIROZAWA:  Your Honor, I think the -- although we

18   have discussed the significance of a felony plea and the

19   significance of a felony conviction, I think that hearing the

20   consequences here in this courtroom before Your Honor has had a

21   significant impact on Mr. Rodriguez.

22       THE COURT:  The consequences being what he will lose

23   in terms of his right to vote and hold certain offices --

24       MS. HIROZAWA:  Correct.  And I have informed

25   Mr. Rodriguez that in New York State he would be eligible to

vote again once he completes any sentence and term of probation, but I recognize that is not true in every state.

Obviously, the rights to serve on a jury and the rights to possess a firearm, those are rights that would never be recuperated following a felony conviction.

And Mr. Rodriguez does not own any firearms, but I think this has been, of course, a difficult decision for him as someone that has no prior felony record at all and has no -- has not had prior involvement in court proceedings. It's a decision that I do believe he arrived at knowingly and intelligently and voluntarily, but it is still a very challenging decision.

THE COURT: No, I'm sure it is. I'm just trying to get a sense of what he envisions moving forward. If he's envisioning a stipulated facts bench trial, obviously, the government has to agree to that.

Are we talking about like a written plea agreement like the one that the government wanted him to enter initially?

MS. HIROZAWA: Your Honor, if I could maybe perhaps speak with Mr. Rodriguez briefly, I think it is a very difficult decision for him, and so I think it might benefit us to speak again.

THE COURT: Why don't we do this, because I have some time this morning, and we've been through a lot of this.

Mr. Rodriguez, I don't want you to feel any pressure to enter this plea. That's not my intention. At the same time, I

1    want to make sure you've thought through the various

2    consequences of the decision you're making here, of what you

3    decide, and I think it would be prudent to give you time to talk

4    through the various approaches with Ms. Hirozawa, and the

5    government counsel is here as well, to get their input, to the

6    extent that's helpful for you as well.  Okay?

7              THE DEFENDANT:  (Nodded head.)

8              THE COURT:  I don't want you to think I'm trying to

9    signal one way or another to you.  Okay?  I feel like you're

10   looking to read my face a lot when I'm talking to you.  And I'm

11   really not trying to talk you out of the plea; I'm not trying to

12   talk you into the plea.

13       I just want to make sure you understand the consequences of

14   the plea, and the consequences of the plea could be the same as

15   the consequences of a bench trial.  All right?  That may be the

16   reality that you have to decide.

17       So -- but I want you to feel comfortable with the decision.

18   I know the government wants you to feel comfortable, your

19   counsel.  So I am here.  I don't have another matter until

20   11:00.

21       I would prefer, if this case is going to result in a plea,

22   to do this today, because I know that the government has

23   accommodated the defense in a substantial way, and to start over

24   from scratch would not be in anyone's interest.  All right?

25       So let's take a break.  Take your time.  I can come back at

1    10:45 or earlier.

2            MS. HIROZAWA:  I think 10:30 would work, Your Honor.

3    Thank you.

4            THE COURT:  Okay.  Thanks so much.

5        (Recess taken from 10:11 a.m. to 10:42 a.m.)

6            THE COURT:  All right.  Where are we?

7            MS. HIROZAWA:  Your Honor, we are ready to proceed, if

8    we can approach the podium.

9            THE COURT:  Yes.

10           MS. HIROZAWA:  Thank you, Your Honor, for the

11   opportunity to take a breather.

12           THE COURT:  Sure.

13           MS. HIROZAWA:  Obviously, this is a very big decision

14   for Mr. Rodriguez, and I think seeing -- hearing all of the

15   consequences and the words "felony conviction" here in court, of

16   course, makes it all feel a lot more real.  So thank you for

17   giving us the time and space to just process that.

18           THE DEFENDANT:  Yes.  Thank you, Your Honor.  I want

19   to make sure that I accept full responsibility for the resulted

20   actions of that day, although I never planned on doing anything

21   like that.

22           THE COURT:  In advance?

23           THE DEFENDANT:  Yes, I didn't plan it in advance, nor

24   when I was there either.

25           THE COURT:  Okay.  But at that moment when you used

1    the bear spray, you did so --

2                THE DEFENDANT:  Chemical.

3                THE COURT:  Chemical spray.  Sorry.  I didn't mean to

4    say that.  That's just shorthand.

5        When you used the chemical spray to spray the officer, you

6    were acting voluntarily, you were acting intentionally in that

7    moment, and you were acting forcefully in that moment; correct?

8                THE DEFENDANT:  Yes, Your Honor, when I got sprayed,

9    that's when I lost it, and that's when I --

10               THE COURT:  But you still knew what you were doing?  I

11   get that you were emotional and reactive, and yet, you

12   voluntarily did this; correct?  You voluntarily sprayed the

13   chemical spray?  Nobody forced you to do it; you did it?

14               THE DEFENDANT:  Your Honor, yes, nobody forced me to

15   do it.  But the people in the crowd that had a microphone, they

16   were telling people to continue to move forward repeatedly.

17   And --

18               MS. HIROZAWA:  There were a number of environmental

19   factors that contributed to it.

20               THE COURT:  Things were revved up around you.  I get

21   that.

22               THE DEFENDANT:  Yes, ma'am.

23               THE COURT:  But it's critical to the plea that you

24   agree that you acted in that moment with intent and with force

25   and voluntarily.

1          Do you agree to all of those three things, in that moment?

2               THE DEFENDANT:  I did it in that moment, yes.

3               THE COURT:  Okay.  That's all.  And I understand --

4     you will have an opportunity at sentencing to help me understand

5     the whole context of what you did.  I just can't take your plea

6     if you didn't in that moment agree that you acted intentionally

7     and voluntarily and forcefully.

8          Do you understand?

9               THE DEFENDANT:  Yes, Your Honor.

10              THE COURT:  I think we're on the same page.  Do you

11    agree?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Okay.  All right.  So I think the last

14    question I asked you that gave you some pause I want to ask you

15    again, because I know it created some concern on your part.

16         So I want to again ask you that you understand that if I

17    accept this plea, that you could be deprived of various civil

18    rights.  Temporarily or permanently, I don't know.  Your counsel

19    tells me in New York that you might be able to vote in the

20    future.  I can't represent you about that.  But I need you to

21    understand that by entering this plea, you could be deprived of

22    the right to vote.

23         Do you understand that?

24              THE DEFENDANT:  Yes, Your Honor.

25              THE COURT:  And you also understand that you could be

1    deprived of the right to hold certain kinds of jobs, certain

2    kinds of government jobs, for example?

3            THE DEFENDANT:  Yes, Your Honor.  Maybe in the future,

4    I will seek to request a pardon from the government or the

5    Supreme Court.

6            THE COURT:  Obviously, there's no guarantee that that

7    would happen.

8        You understand that?

9            THE DEFENDANT:  Yes, Your Honor.

10           THE COURT:  In fact, that happens pretty rarely.

11       You understand that?

12           THE DEFENDANT:  I understand.

13           THE COURT:  Okay.  You also could be deprived of the

14   right to serve on a jury.

15       You understand that?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  And you could possibly be deprived of the

18   right to possess firearms based on various federal, state, and

19   local laws.

20       Do you understand that?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  As well as ammunition, you understand?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  Okay.  So understanding all of the rights

25   that you're giving up by pleading guilty, do you still want to

1    plead guilty?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Okay.  Do you have any questions about the

4    rights you're giving up or anything else connected with this

5    plea of guilty?

6            THE DEFENDANT:  No, Your Honor.

7            THE COURT:  All right.  Have you had enough time to

8    discuss with your lawyer the charges against you in the

9    superseding indictment, this plea, and the rights that you're

10   giving up by pleading guilty?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  Okay.  And are you satisfied with her

13   services as your attorney in this case?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Are you pleading guilty because you are,

16   in fact, guilty?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  Has anyone forced you or threatened you to

19   get you to plead guilty?

20           THE DEFENDANT:  No, Your Honor.

21           THE COURT:  All right.  So Mr. Rodriguez, how do you

22   plead on the charge of assaulting, resisting, or impeding

23   certain officers in violation of Title 18 United States Code

24   Section 111(a)(1) and (b)?  Guilty or not guilty?

25           THE DEFENDANT:  Guilty.

1          THE COURT:  Okay.  I'm satisfied that Mr. Rodriguez

2     understands his rights and what he is waiving in agreeing to

3     plead guilty.  I find he has entered his plea voluntarily.  I

4     find there's a factual basis for his plea.  I therefore accept

5     his plea and find him guilty of assaulting, resisting, or

6     impeding certain officers in violation of Title 18 United States

7     Code Section 111(a)(1) and (b).

8          All right, Mr. Rodriguez.  The next step, as I know you

9     know, is that the Probation Office will prepare a report for me,

10    and you will be interviewed for that report with your counsel

11    present.  And as I explained to you earlier, you will have the

12    right to object to the facts that are put in the report.  You

13    will have a right to object to the guideline calculations in the

14    report, and the government will as well.

15         After I've had a chance to review the report and your

16    attorneys have a chance to file a sentencing memorandum and the

17    government has a chance to file a sentencing memorandum and any

18    response to one another, then we will come back for a sentencing

19    hearing.

20         Do you understand?

21              THE DEFENDANT:  Yes, Your Honor.

22              THE COURT:  Okay.  Have you all talked about a

23    potential date for sentencing?

24              MS. HIROZAWA:  We have not yet, Your Honor.

25              THE COURT:  I am going to wait for Mr. Hopkins,

```
1    because I don't want to double-set this at a time that conflicts

2    with another matter.  But generally, we're looking at least 70

3    days out.  So that would be the end of May.

4              MS. HIROZAWA:  Your Honor, while Mr. Hopkins is out,

5    may I just ask a procedural question?

6              THE COURT:  Sure.

7              MS. HIROZAWA:  Does the Probation Office typically

8    reach out to the defense counsel to schedule the

9    presentence interview, or do I need to contact --

10             THE COURT:  I think they do reach out.

11             MS. HIROZAWA:  Okay.

12             THE COURT:  Mr. Hopkins, I was going to propose

13   whether sentencing on June 1st in the afternoon might work or --

14             COURTROOM DEPUTY:  June 1st might be too soon.

15   Normally, they like 70 days.  With the January 6 cases, they

16   like to put it out a little bit farther.  I was looking at the

17   13th.

18             THE COURT:  Why don't we -- could we say the 12th?

19   Would that work for you all?

20             MS. HIROZAWA:  Your Honor, I do have some leave

21   scheduled for that week and into the following week.  Would it

22   be possible to do the end of June or mid-July?

23             THE COURT:  Let's see.  I think end of June could be

24   hard for me, but we could aim for July.

25             MR. WIDMAN:  I'm available in July any week but the
```

1    3rd.

2              THE COURT:  So I'm in trial the next week, but --

3              MS. HIROZAWA:  Would the week of July 17th work for

4    the Court?

5              THE COURT:  That would work, I think.  Why don't we

6    aim for -- how about July 18th?  Would that work for you all?

7              MS. HIROZAWA:  Yes, that should work.

8              MR. WIDMAN:  Yes.

9              THE COURT:  And this will be in person, of course.

10   Okay.  July 18th at 10:00 a.m., does that work?

11             MS. HIROZAWA:  Yes, Your Honor.

12             THE COURT:  All right.  So let's have any -- since you

13   all have so much time to do this, let's have any sentencing

14   memoranda filed by -- wait.  What date did I set?  The 18th?

15             COURTROOM DEPUTY:  The 18th, Your Honor.

16             THE COURT:  Could we have any sentencing memoranda

17   filed on or before July 3rd?  You can always file it earlier.

18   You know that; right?  So file any sentencing memoranda on or

19   before July 3rd and any responses on or before July 10th.

20   There's no need to respond, but if you want to respond, I ask

21   that you do so by July 10th.  All right?

22        And again, provide me access to the video footage when you

23   file your sentencing memoranda.

24        All right.  Is there anything else we need to address?

25             MS. HIROZAWA:  Not at this time.  I will look out for

 1    communication from the Probation Department.

 2              THE COURT:  And if there is an issue, I would reach

 3    out.

 4         Do they get notice on who the probation officer is, or they

 5    just -- Probation reaches out; right?

 6              COURTROOM DEPUTY:  They reach out to them, yes.

 7              MS. HIROZAWA:  Great.  Thank you very much.

 8              THE COURT:  Sure.

 9         And Mr. Rodriguez, you will just remain on the conditions.

10    I know you've been compliant.  Continue to be compliant with

11    your conditions of release.  All right?

12              THE DEFENDANT:  Thank you, Your Honor.  I will.

13              THE COURT:  Okay.  Good.

14         All right.  Mr. Widman, anything for the government?

15              MR. WIDMAN:  No, Your Honor.  Thank you.

16              THE COURT:  Okay.  Thank you, all.

17         (Proceedings adjourned at 10:53 a.m.)

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL COURT REPORTER


        I, Sara A. Wick, certify that the foregoing is a
correct transcript from the record of proceedings in the
above-entitled matter.


/s/ Sara A. Wick_____          April 5, 2023_____
SIGNATURE OF COURT REPORTER          DATE